**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERESA GARCIA, an individual, on behalf of herself and others similarly situated,

Plaintiff,

v.

ISLAND HOSPITALITY MANAGEMENT III, LLC, a Delaware corporation; and, DOES 1 through 50, inclusive,

Defendants.

Case No. 8:24-cv-00583-DOC-ADS

**ORDER GRANTING PLAINTIFF TERESA GARCIA AND DEFENDANT ISLAND HOSPITALITY MANAGEMENT III, LLC'S JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [18] AND GRANTING MOTION FOR ATTORNEY'S FEES [19] AND ENTRY OF JUDGMENT**

Plaintiff Teresa Garcia ("Plaintiff") and Defendant Island Hospitality Management III, LLC ("Defendant") (collectively, the "Parties") filed a Joint Motion for Final Approval of Class Action Settlement seeking final approval of the class and representative action settlement terms set forth in the Parties' previously filed Joint Stipulation of Class Action Settlement and Release of Claims (Dkt. No. 15-4 [the "Settlement"]). That matter came on for hearing before this Court in Courtroom 10A on December 9, 2024.

Plaintiff appeared and argued through her counsel, Jose Garay of Jose Garay, APLC. Defendant appeared and argued through its counsel, Brian T. Ashe and Michael Afar of Seyfarth Shaw LLP.

The Honorable David O. Carter presided at the hearing.

Due and adequate notice having been given to all Class Members, and the Court having considered all papers filed and proceedings held herein, all oral and written arguments regarding the Settlement, and having reviewed the record in the above-captioned matter, and good cause appearing thereto, it is **HEREBY ORDERED AS FOLLOWS:**

I.   **JURISDICTION AND SETTLEMENT CLASS CERTIFICATION**

1.   The Court has jurisdiction over the subject matter of this Action (*Teresa Garcia v. Island Hospitality Management III, LLC*, Case No. 8:24-cv-00583-DOC-ADS, in the United States District Court for the Central District of California), the Parties, and all members of the Settlement Class.

2.   The Court **FINALLY APPROVES** the Settlement Class in this matter consisting of means "all current and former non-exempt employees who worked for Defendant in the State of California during the Class Period." The "Settlement Class" shall not include any person who submitted a timely and valid Request for Exclusion as provided in the Settlement. The "Class Period" is the period from September 6, 2019 through July 15, 2024.

3. Given Plaintiff's assertion of California wage and hour claims, the Parties seek class action settlement approval under the Federal Rule of Civil Procedure 23.

4. The Settlement Class is finally certified solely for settlement purposes. The Court finds, for settlement purposes only, that the Settlement Class satisfies the standards applicable for certification under Federal Rule of Civil Procedure 23. Accordingly, solely to effectuate this Settlement, the Court has certified the Settlement Class as defined above.

5. The fact that the Parties stipulated to class certification as part of the Settlement shall have no bearing on, and will not be admissible in connection with, the issue of whether a class should be certified in any other action. The Court's findings are solely for purposes of finally certifying a Settlement Class and will not have any claim, issue, or evidentiary preclusion or estoppel effect in any other action. Defendant in no way admits to the suitability of this case for class action, collective action, or representative action litigation, other than for purposes of Settlement.

6. In connection with this Settlement, Defendant in no way admits any violation of law or any liability whatsoever to Class Members, individually or collectively, and expressly denies all such liability. Neither this Final Approval Order, the Parties' Settlement, nor any other Settlement documents, shall be offered in any case or proceeding as evidence of any admission by Defendant of any liability on any claim for damages, penalties, restitution, or any other relief.

7. Plaintiff is finally appointed as the Class Representative solely for purposes of settlement.

8. Jose Garay of Jose Garay, APLC are finally appointed as Class Counsel for purposes of settlement.

9. The Parties and the Court-approved Settlement Administrator, Phoenix Class Action Administrative Solutions ("Phoenix"), are specifically directed to perform in accordance with the terms set forth in (1) the Settlement and the related agreements incorporated and attached thereto, and (2) the terms of this Order.

10. The Court finally approves the Parties' Joint Stipulation of Class Action Settlement (Dkt. No. 15-4) and Exhibits A-C attached thereto and incorporates such documents by reference herein.

## II. THE SETTLEMENT HAS BEEN THOROUGHLY EVALUATED AND DETERMINED FAIR AND ADEQUATELY SUPPORTED

11. The Court **FINALLY APPROVES** the Settlement because it meets the applicable criteria. In making this final finding, the Court considers the nature of the claims, the relative strength of Plaintiff's claims, the amounts and kinds of benefits paid in settlement, the allocation of settlement proceeds, and the fact that a settlement represents a compromise of the respective positions of the Parties, rather than the result of a finding of liability at trial.

12. The Parties adequately and thoroughly investigated the facts relating to Plaintiff's claims alleged in this Action and extensively studied the legal principles applicable to those claims. The Parties engaged in extensive discovery and arm's-length negotiations prior to reaching this Settlement.

13. Based on the factual and legal issues involved, the expense and time necessary to prosecute this Action through trial, the risks, uncertainty, and costs of further prosecution, the difficulty of proof necessary to establish a class for purposes of liability, and the relative benefits to Class Members of an expeditious resolution, the Settlement is fair, reasonable, and adequate.

## III. INDIVIDUAL SETTLEMENT PAYMENTS FROM THE $80,000 NET SETTLEMENT AMOUNT

14. The Court **FINALLY APPROVES** the monetary terms of the Settlement. Defendant agreed to pay up to a maximum potential Gross Settlement Amount of $140,000. The $140,000 Gross Settlement Amount is inclusive of all Individual Settlement Payments made to Class Members, all Settlement Administration Costs, the employees' share of payroll taxes, the Class Representative Incentive Payment, the LWDA Payment, and attorneys' fees and costs.

15. The Gross Settlement Amount shall be funded within thirty (30) calendar days after the Effective Date.

16. The Net Settlement Amount shall be $80,000. The Net Settlement Amount refers to the Gross Settlement Amount minus Court-approved attorneys' fees and costs, Settlement Administration Costs, the LWDA Payment, and Class Representative Incentive Payment. The Net Settlement Amount is the maximum amount that shall be available for distribution to Class Members who do not submit a timely Request for Exclusion (*i.e.*, available to all participating members of the Settlement Class).

17. This Settlement shall be a non-reversionary Settlement. Each member of the Settlement Class shall be entitled to an Individual Settlement Payment consisting of their share of the Net Settlement Amount, in accordance with the formula set forth below.

18. The Court finally approves the Class consisting of all current and former non-exempt employees who worked for Defendant in the State of California from September 6, 2019 through July 15, 2024. The final Settlement Class contains 1,534 Class Members who did not opt out.

**IV.   THE LWDA PAYMENT**

19. On September 30, 2024, the LWDA was provided notice of the Joint Stipulation of Class Action and PAGA Settlement. The LWDA did not object to the proposed Settlement.

20. The Court **FINALLY APPROVES** of the LWDA Payment in the amount of $4,000 out of the Gross Settlement Amount. The LWDA Payment shall be allocated: as (1) $3,000 to the California Labor & Workforce Development Agency ("LWDA") as the LWDA's share of the settlement of civil penalties paid under this Settlement pursuant to the California Private Attorneys General Act ("PAGA"), Labor Code section 2698, *et seq.*; and (2) as $1,000 to the Net Settlement Amount for distribution to Aggrieved Employees based on number of work weeks worked during the PAGA period, defined as July 3, 2022 through July 15, 2024.

21. The Court **FINALLY APPROVES** the PAGA "Aggrieved Employees"

group defined under the Settlement as Class Members employed by Defendant from July 3, 2022 through July 15, 2024.

## V. ALLOCATION OF INDIVIDUAL SETTLEMENT PAYMENTS

22. The Court **FINALLY APPROVES** the plan to allocate each applicable Class Member's Individual Settlement Payment and the Class Representative Incentive Payment on the grounds that such allocations are fair and reasonable. Distribution of these funds shall be done in accordance with the Settlement and this Order, as set forth below.

23. Each Class Member will be eligible to receive a portion of the Net Settlement Amount in accordance with the following formula:

> Each Class Member's potential share of the Net Settlement Amount will be calculated by dividing the number of Weeks Worked by the Class Member by all Weeks Worked during the Class Period by all Class Members, multiplied by the Net Settlement Amount [*i.e.*, (individual Weeks Worked ÷ total Weeks Worked by Class Members) x Net Settlement Amount].

Provided that a Class Member did not submit a timely and valid Request for Exclusion to opt out of the Settlement, he or she shall receive the full Individual Settlement Payment allocated to him or her. If a Class Member did submit a timely and valid Request for Exclusion to opt out of the Settlement, he or she shall receive only that portion of the individual settlement payment derived from the LWDA Payment (*i.e.*, the PAGA portion of the Settlement Payment).

24. The settlement check will include language indicating that endorsing and cashing the check will constitute a release of claims under the California Labor Code, California Unfair Competition Law, and PAGA, for any and all claims asserted or that could have been asserted based on the facts alleged in the Action. The language to be included will be substantially similar to the following:

> My signature or cashing of this check constitutes a full and complete release of Island Hospitality Management III, LLC, and all of their current or former subsidiary or affiliated entities, and their current or former officers, directors, and employees, for any and all claims asserted or that could have been asserted based on the facts alleged in the operative First Amended Complaint in the

5

lawsuit entitled *Teresa Garcia v. Island Hospitality Management III, LLC*, pending in the United States District Court, Central District of California, Case No. 8:24-cv-00583-DOC-ADS including the claims brought under the California Labor Code, California Unfair Competition Law, or PAGA, arising during my employment at any time between September 6, 2019, through July 15, 2024.

25. **Timing And Structure Of Individual Settlement Payments.** Each Class Member's portion of the Net Settlement Amount shall be distributed as one single check. Phoenix, the Settlement Administrator, shall issue the distribution of the Individual Settlement Payments no later than thirty (30) calendar days after the funding of the Gross Settlement Amount.

26. Each Class Member's Individual Settlement Payment will be characterized as 80% Form 1099 income and 20% Form W-2 income, to reflect that 80% of the payment will account for penalties and interest, while 20% will account for unpaid wages. In accordance with applicable tax laws, required tax withholdings and payroll deductions will be taken from each Individual Settlement Payment for the portion allocated to Form W-2 income and remitted to the appropriate taxing authorities. Phoenix shall issue any necessary IRS Form 1099 and Form W-2 statements to Class Members for their respective Individual Settlement Payments. Class Members shall be solely and legally responsible for paying all other applicable taxes on their respective Individual Settlement Payments and shall indemnify and hold harmless Defendant from any claim or liability for taxes, penalties, or interest arising as a result of the payments. In allocating the Individual Settlement Payments pursuant to applicable law, all payments for wages shall be subject to payroll tax withholdings and a Form W-2, while all payments for penalties shall not be subject to payroll tax withholdings and will be recorded on a Form 1099.

27. Phoenix shall meet all of the requirements to establish a Qualified Settlement Fund pursuant to U.S. Treasury Regulation Section 468B-1.

28. **Undeliverable Or Uncashed Checks.** Any settlement checks distributing Individual Settlement Payments returned to Phoenix as undeliverable shall be sent within

5 calendar days via First Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, Phoenix shall attempt to determine the correct address using the National Change of Address Database maintained by the United States Postal Service, and it shall then perform a re-mailing within 5 calendar days.

29. Uncashed settlement checks will not be reissued, except for good cause and as mutually agreed upon by the Parties in writing. The amount of any Individual Settlement Payments that remain undeliverable or uncashed 180 calendar days after the postmarked date of the initial mailing of the Individual Settlement Payments will be sent to the California State Controller's Office to be held as "Unclaimed Property" in the name of the Class Member. Phoenix shall notify Class Counsel and Defendant's Counsel of any undeliverable checks.

## VI. RELEASE OF CLAIMS

30. The Court **FINALLY APPROVES** the terms of the release of claims on the grounds that it is fair and reasonable. Except as to any Class Members who filed a valid and timely opt-out, all of the claims asserted in the Action shall be released by operation of entry of this Final Approval Order and judgment, contingent upon full funding of all sums owed under the Settlement.

31. **Release By Class Members And Aggrieved Employees.** By operation of the entry of this Order, and except as to such rights or claims as may be created by the Settlement, each Class Member, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, spouses, or guardians, will release Defendant and each of the Released Parties of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between September 6, 2019 through July 15, 2024, for any and all claims that were raised or could have been raised based on the factual allegations made in the operative First Amended Complaint. This includes claims for (1) Failure to Pay All Wages Including Minimum and Overtime Wages; (2) Failure to Provide Meal Periods; (3) Failure to Provide Rest Periods; (4) Failure to Reimburse for Necessary Business

Expenditures; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Waiting Time Penalties; (7) Violation of California's Quota Laws; (8) Unfair Business Practices; and (9) Penalties Under Private Attorneys General Act, Labor Code § 2698 *et seq.* for alleged violations of Labor Code sections 200, 201, 202, 203, 204, 226, 226.7, 510, 512, 558, 1174, 1194, 1197, 1198, 2802, the California Industrial Welfare Commission Wage Order, and California Code of Regulations, Title 8, section 11010, subdivisions 7, 11, and 12; (10) claims arising out of alleged violations of the California Labor Code sections 200, 201, 202, 203, 204, 206, 216, 218.5, 218.6, 226, 226.2, 226.3, 226.7, 226.8, 227.3, 246, 351, 510, 512, 516, 558, 1174, 1182.12, 1194, 1194.2, 1197, 1198, 1199, 2100-2112, 2698-2699.5, 2802, and California Industrial Welfare Commission Wage Order No. 5-2001; (11) penalties of any nature; (12) interest; (13) attorneys' fees and costs; and (14) any other claims arising out of or related to the First Amended Complaint filed in the Action, as well as Plaintiff's June 26, 2023 LWDA letter, through July 15, 2024.

32. Class Members employed by Defendant from July 3, 2022 through July 15, 2024 are "Aggrieved Employees" under PAGA for purposes of this Settlement. Aggrieved Employees who exclude themselves from the Class portion of this Settlement shall still receive an individual settlement payment under PAGA. All Aggrieved Employees, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, spouses, or guardians, will release Defendant and each of the Released Parties of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between July 3, 2022 through July 15, 2024, for any and all PAGA claims that were raised or could have been raised based on the factual allegations made in the operative First Amended Complaint. The release contained herein is intended to be a release of any and all claims to the fullest extent permissible by law.

33. **Additional Release By Class Representative.** In addition to the above release applicable to the Class Members, the Class Representative also generally releases any and all claims against Defendant and each of the Released Parties. This general

release includes any and all claims arising from the employment relationship with Defendant or any Released Party, including, without limitation, claims for wrongful termination, discrimination, harassment, or retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000 *et seq.*, the California Fair Employment and Housing Act, Cal. Gov't Code Section 12900 *et seq.*, or the California Labor Code. This general release by the Class Representative also includes a waiver of California Civil Code Section 1542. The Class Representative expressly waives all rights provided by California Civil Code Section 1542, or other similar statutes, that the Class Representative may have against Defendant and each of the Released Parties. California Civil Code Section 1542 states:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

34. **Injunction From Pursuing Released Claims.** As part of the final approval of the Settlement, Class Members shall be enjoined from filing, initiating, or continuing to prosecute any actions, claims, complaints, or proceedings in any court, or with the California Division of Labor Standards Enforcement ("DLSE"), or with the LWDA, or the United States Department of Labor ("DOL"), or with any other entity regarding the Released Claims. Class Members shall be enjoined from contesting or interfering with any effort by Defendant to oppose any attempt to bring such released claims against Defendant.

35. **Acknowledgement Of Binding Terms Of The Settlement Despite Potential Other Claims.** Under the Settlement, Class Counsel, the Class Representative, and the Settlement Class acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to the Released Claims. Nonetheless, Final Approval of this Settlement shall be and remain effective in all respects notwithstanding such different or additional facts or law regarding such Released Claims. These releases do not include any claims that

cannot be waived as a matter of law, but the Settlement Class shall not accept any monetary recovery or benefit from any proceedings relating to any such claims.

## VII. SETTLEMENT ADMINISTRATOR

36. The Court **FINALLY APPROVES** and appoints Phoenix as the Settlement Administrator.

37. The Court **FINALLY APPROVES** the $13,000 Settlement Administration Costs submitted by Phoenix.

38. Phoenix shall keep the data provided by Defendant strictly confidential and shall use it only for the Settlement's administration. Upon completion of the Settlement Administrator's duties in administering the Settlement, Phoenix shall return to Defendant any data they provided to facilitate settlement administration or confirm its destruction.

## VIII. CLASS NOTICE

39. The Court **FINALLY APPROVES** the distribution by U.S. first-class mail of the Notice of Class Action Settlement and Request for Exclusion (collectively, the "Notice Packet") as the best notice practicable under the circumstances to all persons within the Settlement Class. Further, this distribution of Notice Packets satisfied due process under the U.S. Constitution and applicable state law. The Notice Packets informed Class Members of, among other things, (1) the nature of the claims, the identity of Class Counsel, and the essential Settlement terms; (2) the allocation of the Settlement fund, including the formula for distribution of Individual Settlement Payments, the requests for Class Representative Incentive Payment and LWDA Payment, the request for payment of Class Counsel's fees and costs, and the other payments that will be deducted from the Gross Settlement Amount; (3) how to participate in and opt out of the Settlement; (4) how to comment on or object to the Settlement; (5) final approval procedures; and (6) how to obtain additional information. Adequate periods of time were provided by each of these procedures.

### IX. AWARD OF ATTORNEYS' FEES

40. The Court **FINALLY APPROVES** an award to Class Counsel for $35,000 in attorneys' fees (25% of the Gross Settlement Amount) and $3,000 in costs. Based on Class Counsel's submissions, the Court finds that Class Counsel assumed risk by working on a contingent-fee basis, that their efforts resulted in an adequate monetary recovery for the settlement class, and that the requested attorneys' fees are reasonable under a lodestar calculation. No Class Member objected to the amount of any requested attorneys' fees, which weighs in favor of granting the award of costs and attorneys' fees.

41. Phoenix shall pay to Class Counsel the approved attorneys' fees and costs award thirty (30) calendar days after the full funding of the Gross Settlement Amount. Class Counsel is responsible for allocating this payment among themselves and any other counsel for Plaintiff. Phoenix shall issue an Internal Revenue Service Form 1099 to Class Counsel for the attorneys' fees and costs award payment. Class Counsel shall be solely and legally responsible for paying all applicable taxes on any attorneys' fees and costs award payments and shall indemnify and hold harmless Defendant from any claim or liability for taxes, penalties, or interest arising as a result of the payment.

### X. CLASS REPRESENTATIVE INCENTIVE PAYMENT

42. The Court **FINALLY APPROVES** a Class Representative Incentive Payment of $5,000 to the Class Representative for her additional participation in the Action, and such payments shall not be subject to payroll taxes or withholdings. The Class Representative Incentive Payment is in addition to the Class Representative's Individual Settlement Payment.

43. Phoenix shall pay to the Class Representative the approved Class Representative Incentive Payment thirty (30) calendar days after the initial funding of the Gross Settlement Amount. Phoenix shall issue an IRS Form 1099 to the Class Representative for any Class Representative Incentive Payment. The Class Representative shall be solely and legally responsible for paying all applicable taxes on any Class Representative Incentive Payment and shall indemnify and hold harmless

Defendant from any claim or liability for taxes, penalties, or interest arising as a result of the payment.

## XI. EXPIRATION OF SETTLEMENT OBJECTION DEADLINE

44. There have been no objections to the Settlement.

45. Class Members and other individuals and entities who did not timely and validly object to the Settlement shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise.

46. The deadline to timely object to the Settlement expired on October 3, 2024.

## XII. CAFA NOTICE

47. Defendant provided notice of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections 1715(b) and (d). Notice was sent to the U.S. Attorney General. Notice was also sent to the State Attorney Generals of California, Kentucky, Massachusetts, Maine, New York, Texas, and Virginia.

48. Pursuant to CAFA, the U.S. Attorney General and State Attorney Generals of California, Kentucky, Massachusetts, Maine, New York, Texas, and Virginia may submit objections to the Settlement. No objections have been submitted.

## XIII. ORDER OF FINAL APPROVAL

49. Based on all of the reasons above, **FINAL APPROVAL IS SO ORDERED** for this class and representative action Settlement.

## XIV. ENTRY OF JUDGMENT

50. Without affecting the finality of this Order, the Court shall retain continuing jurisdiction over the Action and the Parties and Class, and the administration and enforcement of the Settlement. Any disputes or controversies arising with respect to the enforcement or implementation of the Settlement shall be presented by motion to the Court.

51. There being no just reason to delay, the Clerk is directed to enter this Judgment forthwith.

**IT IS SO ORDERED.**

DATED: January 6, 2025

*David O. Carter*
DAVID O. CARTER
United States District Court Judge